**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

Lessly Paola Reyes Martinez,

                              Petitioner,

vs.                                       Case No. 0:26-cv-00792-DMT-LIB

Pamela Bondi, Attorney General et al.,

                            Respondents.

---

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

### INTRODUCTION

[¶ 1]    THIS MATTER comes before the Court on an Emergency Petition for Writ of Habeas Corpus filed on January 28, 2026. Doc. No. 1. The Respondents filed a Response on February 2, 2026. Doc. No. 4. The Petitioner filed a Reply on February 3, 2026. Doc. No. 5. For the reasons set forth below, the Petition is **DENIED** and **DISMISSED without prejudice**.

### BACKGROUND

[¶ 2]    The facts in this case are not in dispute. Petitioner is a citizen of Guatemala but has lived in the United States, residing in Minnesota. DHS detained the Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A). Petitioner is currently being held at a facility within the State of Minnesota.

### DISCUSSION

### I.    Legal Standard: Habeas Corpus

[¶ 3]    The Constitution provides the right to a Writ of Habeas Corpus, which requires authorities to present a detained person before the court to determine if the detainment is lawful. See U.S. Const. Art. I, § IX. "Habeas is at its core a remedy for unlawful executive detention." Munaf v.

Green, 553 U.S. 674, 693 (2008). As a general matter, 28 U.S.C. § 2241 grants district courts broad jurisdiction to issue a writ of habeas corpus "as law and justice require." Jones v. Hendrix, 599 U.S. 465, 473 (2023). A prisoner can bring a petition for a writ of habeas corpus when "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has held that § 2241(c)(3) confers jurisdiction on district courts to hear habeas corpus challenges to the legality of the detention of aliens. Rasul v. Bush, 542 U.S. 466 (2004).

[¶ 4]    To benefit from the writ's protection, a habeas petitioner bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. Maldonado v. Olson, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases). Since the Petitioner is currently being held in Minnesota, this Court has jurisdiction over this matter. See Trump v. J.G.G., 604 U.S. 670, 672 (2025) (per curiam) (holding that jurisdiction for core habeas petitions "lies in only . . . the district of confinement").

## II.    Change in Executive Agency Policy for Alien Detentions

[¶ 5]    Petitioner claims that Section 1225(b)(2) does not apply to her. Doc. No. 1, pp. 2–3. That provision states, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien **shall be detained** for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded." Jennings v. Rodriguez, 583 U.S. 281, 297 (2018). Under Section 1225(b)(2)(A), the detained alien is not entitled to a bond hearing. See id. (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

[¶ 6]    Instead, the Petitioner argues Section 1226(a) applies. It provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1226(a)(2)(A) further states that the Attorney General "may" release the alien on bond. Jennings, 583 U.S. at 303. Section 1226(c)(1) contains several exceptions, restricting the Attorney General from releasing aliens who committed or are charged with certain offenses.

[¶ 7]    This Court begins its analysis by noting that this debate surrounding the applicability of Sections 1225(b)(2) and 1226(a) has arisen in many courts over the past several months. Previously, the Department of Justice (DOJ) advised Department of Homeland Security (DHS), and thus Immigration and Customs Enforcement (ICE), that Section 1226(a) applied to aliens, like Petitioner, who were inadmissible, but were not subject to expedited removal at the time ICE detained them. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

[¶ 8]    However, on September 5, 2025, the Board of Immigration Appeals ("BIA") held that § 1225(b)(2)(A) appropriately applied to this category of aliens, meaning those aliens are subject to mandatory detention and the immigration judge lacked jurisdiction to hold bond hearings or order release. Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025).

[¶ 9]    Many courts have held this change in policy is incorrect and granted the habeas petitions. See Coronado v. Sec'y, Dep't of Homeland Sec., 2025 WL 3628229, at *7 (S.D. Ohio Dec. 15, 2025) (noting more than 700 decisions addressing this issue with some courts characterizing the "overwhelming majority" of decisions holding that Section 1226(a) applies). However, a small but growing number of courts have reached the opposite conclusion, including one in this District.

See, e.g., Jose C. v. Bondi, Civ. No. 26-135 (PAM/DTS), Order, ECF No. 14 (D. Minn. Jan. 20, 2026); Coronado, 2025 WL 3628229, at *1; Mejia Olalde v. Noem, 2025 WL 3131942, at *1 (E.D. Mo. Nov. 10, 2025); Vargas Lopez v. Trump, 802 F.Supp.3d 1132 (D. Neb. 2025).

## III.    Section 1225(b)(2)(A) Applies to Petitioner

[¶ 10]  After reviewing the statutory language and relevant caselaw, the Court finds Section 1225(b)(2)(A) applies to Petitioner. Accordingly, Petitioner is not entitled to a bond hearing or release.

[¶ 11]  In matters of statutory interpretation, the Court always begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them." Union Pac. R.R. Co. v. Surface Transp. Bd., 113 F.4th 823, 833 (8th Cir. 2024) (cleaned up). The first question is whether Petitioner fits into the presumption of being an "applicant for admission" under Section 1225(a)(1), which provides, "An alien **present in the United States** who has **not been admitted** or who arrives in the United States . . . **shall be deemed for purposes of this chapter an applicant for admission**." (emphasis added). In this context, "admission" specifically means lawful entry, not just presence in the United States. 8 U.S.C. § 1101(a)(13)(A). Accordingly, "[a]n alien c[ould] have physically entered the country many years before and still be an applicant for lawful entry, seeking legal 'admission.'" Mejia Olalde, 2025 WL 3131942, at *3.

[¶ 12]  In this case, Petitioner fits all these criteria. Petitioner is an "alien." Petitioner is also "present in the United States" and "has not been admitted" because "[s]he did not lawful[ly] enter the country after inspection and authorization by an immigrant officer." § 1225(a)(1); § 1101(a)(13)(A); see also Jennings, 583 U.S. at 287 ("Under [] 8 U.S.C. § 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"). Therefore, Petitioner is an "applicant for admission" for

purposes of Section 1225(b)(2)(A), meaning she is subject to detention and not eligible for a bond hearing.

[¶ 13] Petitioner contends that Section 1225(b)(2)(A) only applies to individuals "seeking admission." Some district courts have held that, when the alien has been in the country for several years, the alien must be taking some affirmative step beyond continuous presence in the country to be classified as "seeking admission" and thus subject to Section 1225(b)(2)(A). See, e.g., Ochoa Ochoa v. Noem, 25 CV 10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); Eliseo A.A. v. Olson, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); Mayamu K. v. Bondi, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025).

[¶ 14]   This Court is not convinced there is a meaningful distinction between being an "applicant for admission" and "seeking admission" under Section 1225(b). See Jennings, 538 U.S. at 297 ("As noted, § 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute.")). It does not make sense to describe an active applicant for admission as somebody who is not "seeking" admission. Properly read, "alien seeking admission" is simply another way of referring to an "alien who is an applicant for admission." Coronado, 2025 WL 3628229, at *8. In common usage, someone who is an "applicant for admission" is also necessarily "seeking admission" and Section 1225(a)(1) classifies Petitioner as an applicant for admission based on his presence in the country alone. Id. Moreover, if the group of aliens "seeking admission" were a subset of "applicants for admission," one would assume that Congress would have provided some directives as to the contours of that subset, e.g., factors to consider in deciding what qualifies as "seeking admission." Id. at 9. However, Congress did not do so. Id. Accordingly, Section 1225(b)(2)(A) applies to Petitioner, whether she is taking any affirmative steps to be lawfully admitted or not.

[¶ 15]  Even if the Court assumed for sake of argument that there is a meaningful distinction between an "applicant for admission" and "seeking admission," Section 1225(b)(2)(A)'s use of present-tense language ("seeking" and "determines") shows that its focus is on a specific point in time, namely when the "examining immigration officer" is making a "determin[ation]" regarding the alien's admissibility." See 8 U.S.C. § 1225(b)(2)(A). Presumably, for aliens that have entered the country illegally and evaded detection for an extensive period of time, the specific point in time is when the alien is "seeking admission" during inspection by an immigration official. For those who have evaded detection within U.S. borders, that time is when they are detected. It is effectively as if the border has come to them. If the alien were not seeking admission at that time, he or she withdraw their application for admission and voluntarily "depart immediately from the United States" in lieu of continuing removal proceedings. See 8 U.S.C. § 1225(a)(4). An applicant who rejects that option and instead attempts to remain in the United States by participating in removal proceedings is plainly "seeking admission," and therefore, is subject to Section 1225(b)(2)(A). 8 U.S.C. § 1229a(c)(2)(A), (c)(4).

[¶ 16]  The Court is not persuaded by the argument that Section 1225(b)(2)(A) applies only to aliens arriving at ports of entry or who recently entered the United States. Section 1225(a)(1) explicitly includes more than just arriving aliens in the definition of "applicant[s] for admission." See § 1225(a)(1) ("An alien present in the United States who has not been admitted **or** who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission.") (emphasis added). The structure of Section 1225 similarly illustrates that Congress knows how to limit the scope of the text geographically and temporally but elected not to do so with regards to Section 1225(a)(2)(A). Mejia Olalde, 2025 WL 3131942, at *3. For example, Section 1225(b)(1)(A)(i) applies to an alien "who is arriving in the United States," Section

1225(b)(1)(A)(iii) applies to an alien who cannot show she has been physically in the United States "continuously for the 2-year period immediately prior," but Section 1225(b)(2)(A) is not so limited. That provision has no similar language restricting its applicability only to aliens who are in the process of "arriving" at a port of entry or arrived within a certain timeframe. If Congress wished to impose similar geographic and temporal restrictions on the category of aliens that fall under Section 1225(b)(2)(A), it could have done so as it did with Section 1225(b)(1). Id. at 4.

[¶ 17]  Petitioner's interpretation results in more protections for those who evade the law for years, than for those who are inspected at the border. The text and structure of Section 1225(b)(2)(A) does not support this restrictive understanding of the statute, and the Court will not impose any restrictions where Congress has failed to do so.

[¶ 18]  Moreover, interpreting Section 1225(b)(2)(A) to apply to her does not render superfluous the discretionary detention authority under Section 1226(a), the mandatory detention under Section 1226(c), or the recent amendments to Section 1226 by the Laken Riley Act. See 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). Section 1226(a) authorizes the executive to "arrest[] and detain[]" any alien pending removal proceedings. See Appellants' Opening Brief at 35–36, Avila v. Bondi, No. 25-3248 (8th Cir. 2025). Section 1226(a) supplies detention authority for the significant group of aliens who are not "applicants for admission" and hence not subject to Section 1225(b)(2)(A), such as aliens who were previously lawfully admitted to the United States but are now removable. Id. For example, the detention of aliens who have overstayed their visas is governed by 1226(a). Id. Likewise, Section 1226(c)(1) requires the executive to detain aliens who have been admitted and are now "deportable." See 8 U.S.C. § 1226(c)(1)(B). Section 1225(b)(2), however, does not apply to admitted aliens. As for the Laken Riley Act provisions, as with other grounds of "inadmissibility" listed in Section 1226(c), both (a)(6)(C) and (a)(7) may apply to inadmissible

aliens who were admitted in error or through fraud. <u>See</u> <u>Mejia Olalde</u>, 2025 WL 3131942, at *4 (noting the Laken Riley Act may apply in situations where Section 1225(b) might not).

[¶ 19]  Even if the Court assumes there is a degree of surplusage, the fear of some redundancy does not supersede the plain meaning of Section 1225(b)(2)(A). "As the Supreme Court has explained, when confronted with a choice between an interpretation that honors a statute's plain meaning but produces surplusage, and an interpretation that ignores the plain meaning but avoids surplusage, there is no choice at all—the plain meaning must control." <u>Artola v. Garland</u>, 996 F.3d 840, 844 (8th Cir. 2021). In this case, the plain meaning of Section 1225(b)(2)(A) controls, meaning Petitioner is subject to detention and is not entitled to a bond hearing.

### IV.    Petitioner's Due Process Claim Fails

[¶ 20]  Petitioner also claims her detention violates her due process rights under the Fifth Amendment. Doc. No. 1. As noted, Section 1225(b)(2)(A) squarely governs his immediate detention. Therefore, she is not being detained absent due process because being detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation. The Supreme Court addressed a similar situation in <u>Demore v. Kim</u>, 538 U.S. 510 (2003), and concluded that mandatory detention pending removal proceedings does not violate due process. The <u>Demore</u> detainee argued that since deportation proceedings are indefinite, the indefinite detention violates the Due Process Clause. <u>Id.</u> However, the Court rejected that premise, holding that "detention under Section 1226(c) has a definitive end-point—the end of the removal proceedings—and thus a noncitizen is not subject to indefinite detention." <u>Id.</u> at 529. Thus, Petitioner's due process claim "must fail [and] [d]etention during removal proceedings is a constitutionally permissible part of the process." <u>Id.</u> at 531.

## V.    Petitioner's Denial of Bond Claim Fails

[¶ 21]  Petitioner argues she is entitled to bond under 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. Specifically, that a 1997 Interim Rule of these sections states that aliens present in the country without inspection will be eligible for bond. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Notably this language is not in the codified version of this rule. See 8 C.F.R. §§ 236.1, 1236.1, 1003.19. The codified sections discuss the detention and bond of criminal aliens not lawfully admitted, who are not otherwise covered by mandatory detention, not those present without inspection.

[¶ 22]  Further, agencies have differing objectives and enforce their policies differently within the boundaries of the statutes passed by Congress. The Court's job is to make sure those actions are within the law. See Noem v. Vasquez Perdomo, 146 S. Ct. 1, *5 (mem.) (Kavanaugh, J., concurring in the grant of the application for stay) ("The Judiciary does not set immigration policy or decide enforcement priorities."). The Court has already analyzed why the application of § 1225 is valid and applicable in this case. The Court has held that for this Petitioner, the denial of a bond hearing is legal. Therefore, this claim fails.

## VI.    Petitioner's Warrantless Arrest was Legal

[¶ 23]  Petitioner argues that the arrest was warrantless and therefore, she should be released immediately.

[¶ 24]  Other courts have held that since § 1226 applies, and § 1226 requires a warrant from the Attorney General, then a warrant is necessary in order to be arrested under that statute. See Edwin v. Bondi, Civil File No. 26-00355 (MJD/JFD), 2026 WL 185068 (citing other cases). However,

this Court has held § 1225 applies, not § 1226. Section 1225 makes no mention of warrant, only an inspection by an immigration official.

[¶ 25]  Under § 1357 if an immigration officer has reason to believe an alien is in the United States illegally without a warrant if the alien is also a flight risk. However, under § 1225, if after inspection of an immigration official the applicant for admission is not clearly entitled to stay in the country, detention is mandatory. The key difference between these statutes is the knowledge of the official. "Reason to believe" is a different standard than knowledge. "reasonable suspicion means only that immigration officers may briefly stop the individual and inquire about immigration status. . . . Only if the person is illegally in the United States may the stop lead to further immigration proceedings." Noem, 146 S. Ct. at *3 (Kavanaugh, J., concurring). The Supreme Court acknowledged in 1984 that deportation proceedings are not meant to punish past action but prevent continuing illegal action. To allow someone subject to mandatory detention to go free would "require the courts to close their eyes to ongoing violations of the law." INS v. Lopez-Mendoza, 468 U.S. 1032, 1046 (1984).  An immigration official who has knowledge an applicant for admission has no clear right to be in the United States is required to hold that person in detention until the removal proceedings are completed. Under § 1357 a flight risk is required because the immigration official only has a reason to believe the person is here illegally, whereas with knowledge the assessment of flight risk is not needed because § 1225 requires detention. Therefore, Petitioner's arrest without a warrant was legal and this argument fails.

## CONCLUSION

[¶ 26]  Accordingly, for the reasons set forth above, the Petitioner's Habeas Petition is **DENIED**. This action is **DISMISSED without prejudice**.

[¶ 27]  **IT IS SO ORDERED**.

DATED February 4, 2026.

Daniel M. Traynor, District Judge
United States District Court